**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| B & K MECHANICAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-4149-RDR |
| | ) | |
| MARK WIESE and FORREST | ) | |
| MARTINSON d/b/a CONTRACT | ) | |
| WELDING, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court upon motions to strike contentions from the parties' proposed pretrial order filed by defendant Forrest Martinson d/b/a Contract Welding ("Martinson") (Doc. 139) and defendant Mark Wiese (Doc. 142) and a motion for an extension of the dispositive motion deadline filed by defendant Wiese (Doc. 161). Plaintiff has responded in opposition to each of these motions (Docs. 150, 151, & 162, respectively), and no replies were filed to plaintiff's responses within the permissible time. The court therefore considers these motions to be fully-submitted and ripe for decision. For the reasons set forth below, the court denies each of the motions to strike, grants the motion for extension of the dispositive motion deadline, and will proceed with entry of the parties' proposed pretrial order as revised during the final pretrial conference.

## I.   Defendant Martinson's Motion to Strike (Doc. 139)

Defendant Martinson asks the court to strike five check transactions, listed in paragraphs enumerated 1 through 5, from the plaintiff's contentions section of the proposed pretrial order on the basis that plaintiff failed to disclose these transactions as part of its initial disclosures and in response to earlier

contention interrogatories. These interrogatories asked plaintiff to detail its contentions with regard to: how defendant Martinson improperly diverted funds, the specific amount of the funds diverted, the date or dates on which they were diverted, the property which plaintiff claimed Martinson diverted, the value of the property alleged to be diverted, and how the property was diverted.

Plaintiff contends that defendant Wiese, while an employee of plaintiff, hired defendant Martinson to assist him in performing various jobs, and that during this period, "B&K was [invoiced] and paid Martinson for goods not actually purchased by Martinson, Martinson retained a portion of the funds, and the remainder of the funds was paid to Wiese."[1]  The five check transactions at issue are referenced in plaintiff's contentions as examples of this activity, and are stated as follows in the proposed pretrial order:

> Martinson wrote Mark Wiese the following checks, and potentially others, in addition to the check referenced above:
>
> 1.  January 12, 2000, in the amount of $2,400.00 for "3 propane burners with fans" endorsed by Mark Wiese"
> 2.  May 21, 2000, in the amount of $600.00 endorsed by Mark Wiese.
> 3.  June 14, 2000, in the amount of $2,400.00 for "heat exchanger & refride valves for John Morrell" endorsed by Mark Wiese.
> 4.  June 16, 2000, in the amount of $1,800.00 for "1 12" curve conveyor" endorsed by Mark Wiese.
> 5.  July 7, 2001, in the amount of $6,700.00 for "3# 90° curve conv. 24: wide series 220 belt: $7,200.00."  The job number was designated as "W227," indicating a Mark Wiese job.[2]

Defendant Martinson propounded interrogatories to plaintiff, to which plaintiff responded on April 12, 2004.  Included within these interrogatories and responses were the following relevant items:

---

[1] Proposed Pretrial Order at § V.A. Plaintiff's Contentions.

[2] *Id.*

**INTERROGATORY NO. 3:** Describe in detail how Forrest Martinson improperly diverted funds from B&K Mechanical.

**ANSWER:** On information and belief, Defendant Forrest Martinson d/b/a Contract Welding diverted funds through former B&K employee Defendant Mark Wiese. At the present time there is not sufficient information available to detail how the funds were improperly diverted from B&K Mechanical. A response to this interrogatory will be made when the information needed becomes available.

**INTERROGATORY NO. 4:** State the specific amount of the funds B&K Mechanical claims were diverted on each individual claim.

**ANSWER:** At the present time there is insufficient information available to detail the specific amount of funds diverted from B&K Mechanical by Defendants Forrest Martinson and Mark Wiese. A response to this interrogatory will be made when the information needed becomes available.

**INTERROGATORY NO. 5:** State the date or dates on which B&K Mechanical claims funds were diverted.

**ANSWER:** At the present time there is insufficient information available to detail the specific amount of funds diverted from B&K Mechanical by Defendants Forrest Martinson and Mark Wiese. A response to this interrogatory will be made when the information needed becomes available.

**INTERROGATORY NO. 7:** Describe the property which B&K Mechanical claims Martinson Diverted.

**ANSWER:** On October 9, 2002, Forrest Martinson d/b/a Contract Welding sent invoice number 000139 to B&K Mechanical, Inc., requesting payment for a 2"SS Angle, 1½"SS Angle, 2" SS Flat, and a 6"SS Flat totaling $6,000.00, which B&K Mechanical promptly paid. On May 14, 2003, Forrest Martinson d/b/a Contract Welding sent a check, number 3168, to B&K Mechanical, Inc., refunding the $6,000.00 paid by B&K pursuant to invoice 000139. Forrest Martinson stated on a note accompanying the check, "This is a refund for materials on invoice 139 which replaced invoice 136 per your direction. No materials were purchased." On this information and belief Contract Welding has improperly diverted property from B&K Mechanical in the past by failing to refund B&K for equipment paid for by B&K and not purchased.

**INTERROGATORY NO. 8:** State the value which B&K Mechanical claims the property alleged to have been diverted was worth at the time of diversion.

**ANSWER:** At the present time there is not sufficient information available to make a definitive determination as to the amount of property diverted of the value of such diverted property.  A response to this interrogatory will be made when the information needed becomes available.

**<u>INTERROGATORY NO. 9:</u>** State the date or dates B&K Mechanical claims the property was diverted.

**ANSWER:** At the present time there is not sufficient information available to make a definitive determination as to the dates the property was diverted.  A response to this interrogatory will be made when the information needed becomes available.

**<u>INTERROGATORY NO. 10:</u>** Describe in detail how Forrest Martinson improperly diverted property from B&K Mechanical.

**ANSWER:** At the present time there is insufficient information available to detail how Forrest Martinson improperly diverted property from B&K Mechanical.  A response to this interrogatory will be made when the information needed becomes available.[3]

Plaintiff provided supplemental responses to defendant Martinson's interrogatories on two occasions prior to the date the instant motion to strike was filed, May 28, 2004 and July 9, 2004, and did not detail the five check transactions at issue in any of its supplemental responses.

Defendant Martinson contends that plaintiff should have disclosed this information as part of its initial disclosures related to its computation of damages pursuant to Fed. R. Civ. P. 26(a)(1)(C), in its responses to defendant Martinson's contention interrogatories, or if not known until a later time, through its supplementation of the foregoing pursuant to Fed. R. Civ. P. 26(e) prior to including it in the parties' proposed pretrial order.

Fed. R. Civ. P. 37 provides the court with authority to bar a party's use of information not properly disclosed during discovery.  "A party that without substantial justification fails to disclose information

---

[3] Defendant Martinson's Exhibits in Support of his Motion to Strike (Doc. 140), at Ex. 7.

required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless the failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."[4]  As defendant Martinson correctly points out, this sanction for failure to disclose operates automatically to bar the use of the applicable information upon findings by the court that there is not substantial justification for the failure to disclose, and that the failure to disclose prejudices the opposing party.  "Under Rule 37(c)(1), the court must first consider whether the party [proposing to use the information] has established 'substantial justification' for the failure to disclose and then consider whether the failure to disclose was harmless. . . .  The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure."[5]

"Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."[6]  "The proponents position must have a reasonable basis in law and fact."[7]  "The test is satisfied if there exists a genuine dispute concerning compliance."[8]  "Failure to comply with the mandate of the Rule [requiring the disclosure] is harmless when there is no prejudice to the party entitled to the disclosure."[9]  The United

---

[4] Fed. R. Civ. P. 37(c)(1).

[5] *Nguyen v. I.B.P., Inc.*, 162 F.R.D. 675, 679-80 (D. Kan. 1995).

[6] *Id.* at 680.

[7] *Id.*

[8] *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d. 490 (1988).

[9] *Id.*

States Court of Appeals for the Tenth Circuit has provided additional guidance on what a court should consider in weighing substantial justification and harmlessness: "(1) the prejudice or surprise to the party against whom the [information] is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such [information] would disrupt the trial; and (4) the moving party's bad faith or willfulness." [10]

Plaintiff offers, as justification for not disclosing the transactions at issue, that it was unable to do so because of defendant Martinson's failure to timely provide requested documents.  It points to the need to file a motion to compel production from defendant Martinson (Doc. 104), which was granted by the court (Doc. 109).  Plaintiff contends that defendant Martinson's failure to provide complete and timely discovery responses delayed its ability to formulate a detailed declaration of damages or clarify its contentions with respect to the transactions at issue.  Plaintiff contends that it did not receive all relevant documents until March 16, 2005, and that defendant Martinson promptly received notice of the use plaintiff intended to make of the disputed information, within 14 days, when plaintiff provided him with its portions of the parties' proposed pretrial order on March 30, 2005.

Therefore, with respect to the factors of whether there is prejudice to the opposing party and the ability of the proposing party to cure any such prejudice, plaintiff contends that defendant Martinson is not prejudiced because any delay in disclosure was attributable to defendants delayed production; defendant Martinson received prompt notification, through the medium of the proposed pretrial order, of plaintiff's intended use of the check transactions at issue; and plaintiff has cured any prejudice by supplementing all

---

[10] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

discovery responses and disclosures on May 11, 2005, well in advance of any trial in this matter, which has not yet been set for trial.

With respect to the factor of the extent to which permitting use of the disputed information would disrupt trial, plaintiff contends that use of this information would not be disruptive at trial because no trial is currently ongoing in this matter, and no trial date has been set at this time.  With respect to the final factor of the bad faith or willfulness of the party seeking to use the information, plaintiff denies it has acted willfully or in bad faith during discovery in this matter  and points out that defendant Martinson has not alleged any such activity on its part.

Having reviewed the parties' arguments and the record in the case, the court notes that there have now been motions to compel discovery sustained against every party.  In addition to motions to compel by plaintiff against each of the defendants, there has also been a motion to compel by plaintiff against a third-party seeking production of documents that could have a bearing the transactions between the parties. Therefore, while defendant Martinson has provided an affidavit from his counsel, Mr. Moyer, in support of his motion to the effect that the five checks at issue were disclosed to plaintiff on June 14, 2004, the court does not know and cannot assume  that plaintiff had received sufficient additional discovery to appreciate any potential  significance to the checks at that time.

Mr. Moyer attests that defendant Martinson produced the checks to plaintiff, so it cannot be disputed that defendant Martinson had the checks in his possession longer than they have been in the possession of plaintiff.  If the court accepts as reasonable defendant Martinson's representation that plaintiff's contentions with respect to these checks have come as a surprise, then the alleged significance of the checks must not be apparent on their face, and must instead arise when they are considered together

7

with other information developed during the course of discovery.  If defendant Martinson takes the position

that he could not anticipate and was surprised by the use plaintiff has made of the checks, then it seems

reasonable to the court to assume that plaintiff did not necessarily recognize the use to which it would

ultimately put the five checks until it had reviewed them in the context of other discovery.  As discovery in

response to orders compelling production has continued up to and beyond the time that defendant

Martinson's instant motion to strike was filed, the court finds plaintiff's explanation that it made the earliest

possible disclosure of these checks, upon receiving  sufficient discovery to know how it would make use

of them, when it included them in its contentions in the pretrial order to be reasonable.  This explanation

would appear to the court to satisfy the test for harmlessness that "there exists a genuine dispute concerning

compliance" with the rules for disclosure and supplementation.[11]

 With respect to the factors of prejudice to defendant Martinson and plaintiff's efforts to cure any

such prejudice, given the history of document production in this case, the court cannot find that there is any

prejudice to defendant Martinson that is not potentially attributable to his own actions, or those of his co-

defendant, in delaying production of documents to plaintiff.  Additionally, the court finds that plaintiff has

made efforts to cure any potential prejudice by continued seasonable supplementation.  As a result, the

court does not find that there is unfair prejudice to defendant Martinson from plaintiff's inclusion of these

checks in its contentions in the parties' proposed pretrial order.

 With regard to the factor of the potential disruptive impact at trial from the use of the disputed

information, there is not currently a trial setting in this matter, and in keeping with the trial judge's usual

---

[11] *Nguyen*, 162 F.R.D. at 680.

procedure, the court anticipates that no date for trial will be set until after the decision of all timely-filed dispositive motions.  As such, this is not a circumstance where information is being sprung upon an opponent on the eve or in the midst of trial.  Defendant Martinson has been aware of the use plaintiff proposes to make of these checks since it received plaintiff's portions of the pretrial order on March 30, 2005.  The intervening time would seem more than adequate to permit defendant Martinson to develop a strategy to dispute plaintiff's contentions with regard to these checks in motion practice or at trial.  As such, the court does not find that plaintiff's use of the disputed information would have a disruptive impact at trial.

With regard to the final factor of plaintiff's willfulness or bad faith in not making earlier disclosure of the information, as discussed above, the court finds plaintiff explanation for the timing and manner of its disclosure of its contentions regarding the checks to be reasonable under the circumstances, and given the history, of discovery in this case.  While there have been, as noted above, numerous discovery disputes in this matter to date, the court does not find evidence in the record of the case to suggest that plaintiff has acted willfully or in bad faith with respect to its disclosures or discovery responses.  Additionally, the court does not find record of any allegations of any such willful or bad faith conduct in this, or any prior, dispute between the parties.  Accordingly, the court does not find that plaintiff has acted willfully or in bad faith in not previously disclosing its intended use of these five checks to defendant Martinson.

Having found plaintiff's explanation for its delayed disclosure to be reasonable and that the four factors for assessing substantial justification and harmlessness weigh in favor of permitting plaintiff to use the disputed check information, the court concludes that plaintiff had substantial justification for its failure to make earlier disclosure and that any such failure was, in any event, harmless.  Defendant Martinson's motion to strike will, therefore, be denied.

**II.      Defendant Wiese's Motion to Strike (Doc. 142)**

Defendant Wiese's motion to strike seeks to have the court strike the same five check transactions, for substantially the same reasons, as were discussed with respect to defendant Martinson's motion to strike, and defendant Wiese adopts the facts and authorities of defendant Martinson's motion in his memorandum in support of his motion to strike (Doc. 143).  Additionally, defendant Wiese seeks to have the court strike portions of plaintiff's claim for damages from the damages section of the parties' proposed pretrial order on the grounds that they represents  new and different theories of damages that were not included in plaintiff's previous disclosures and discovery responses.

With respect to the five check transactions contained in the plaintiff's contentions in the proposed pretrial order, the court finds that defendant Wiese objections are essentially the same as defendant Martinson raised in his motion and should be denied for the same reasons.

Because both defendants resisted production of documents until compelled by the court, the court cannot conclude that plaintiff had received sufficient discovery to have fully refined its contentions with regard to these checks in time to make disclosure prior to formulating its contentions in the parties' proposed pretrial order.  The explanation provided by the plaintiff is reasonable in view of the facts and circumstances of the case, and any  prejudice to defendant Wiese from the inclusion of these checks in plaintiff's contentions is potentially attributable to his own actions in delaying production.  Moreover, plaintiff has made efforts to cure any such prejudice through continued seasonable supplementation, and the passage of time since defendant Wiese received notice of plaintiff's contentions in the proposed pretrial order should be adequate to allow him time to prepare to counter plaintiffs contentions.  As such, the court

finds that defendant Wiese's motion to strike will be denied with respect to the five check transactions

contained in plaintiff's contentions in the proposed pretrial order.

Defendant Wiese's motion also seeks to have the court strike portions of plaintiff's claim for

damages in the damages section of the proposed pretrial order.  Plaintiff's damages are described as

follows in the damages section of the parties' proposed pretrial order:

X.    Damages

A.    Plaintiff's Damages.  Plaintiff's damages remain uncertain as plaintiff continues to
receive overdue discovery responses from defendants.  Plaintiff anticipates making the
following claims for damages:
1.    Wages paid to Wiese while he was being a faithless employee.  Wages earned
from 1999 to June of 2003, for a total of $333,967.49.
2.    Funds diverted from B&K by Wiese and Martinson.  The total amount diverted
remains unknown due to delinquent discovery, at minimum a total of $13, 900.00
was diverted by the joint efforts of Wiese and Martinson, and further funds were
diverted thru Wiese's sale of scrap metal.
3.    Income from corporate opportunities diverted from B&K by Wiese during the
period of time he was employed by B&K.  For June, July, and August, Wiese
Mechanical, Inc. had a total income of $144,331.58.[12]

On March 31, 2004, defendant Wiese served a set interrogatories upon plaintiff (Doc. 31), wherein

Interrogatory No. 14 asked plaintiff to "[p]lease itemize all damages claimed by you and (1) explain how

all damages are calculated; (2) identify all documents relating to your claimed damages; and (3) identify all

witnesses who have knowledge relating to those claimed damages."[13]  Plaintiff served its answers to

defendant Wiese's interrogatories on May 3, 2004, and provided the following response to Interrogatory

No. 14: "At the present time there is insufficient information available to calculate appropriate damages.

---

[12] Proposed Pretrial Order at § X.A. Plaintiff's Damages.

[13] Defendant Wiese's Memorandum in Support of his Motion to Strike (Doc. 143), at Ex. A.

A detailed response to this interrogatory will be sent when the information becomes available."[14]  Plaintiff provided supplemental responses to defendant Wiese's interrogatories on May 28, 2004, including the following supplemental response to Interrogatory No. 14:

> During the year 2002, Defendant Wiese was in charge of several jobs for B&K Mechanical.  During this short period of time, Defendant Wiese's jobs totaled a net loss of $202,754.27.  Defendant Wiese also caused significant delay in payment of amounts owing to B&K Mechanical on the Perry, Iowa project, and in excess of $50,000 remains owing on this project.  Further, as a consequence of Defendant Wiese's actions, B&K Mechanical has likely lost the ability to do further work for Tyson/I.B.P., and has ceased doing business.  Total losses attributable to Wiese's misconduct to date are, consequently, in excess of $250,000, and losses continue to accumulate.  With regard to potential witnesses as to such damages, such witnesses include Robert Howard, Christine Howard, all employees of B&K Mechanical, who worked on jobs supervised by Wiese, and all employees of Contract Welding who worked on such jobs.  Additional witnesses may include Ivan Koepke, and DeWayne Rolley.  Documents relating to claimed damages are those documents being produced in response to Defendant Wiese's First Request for Production of Documents.[15]

Plaintiff provided additional supplemental responses to defendant Wiese's interrogatories on July 9, 2004; however, plaintiff's response to Interrogatory 14 was not supplemented at that time.

Defendant Wiese contends that plaintiff's claims for damages in the proposed pretrial order are significantly different and broader than those outlined in its responses to his damage interrogatory.  Specifically, defendant Wiese contends that plaintiff is now seeking for the first time remedies based disgorgement of the wages paid to defendant Wiese by B&K Mechanical and income earned by defendant Wiese's company, Wiese Mechanical, for work it performed for Tyson.  Defendant Wiese objects to the inclusion of these theories of damages because they were never identified by plaintiff prior to their inclusion

---

[14] *Id.*

[15] *Id.* at Ex. C.

in the pretrial order and were not provided in plaintiff's response to defendant Wiese's Interrogatory No. 14. While defendant Wiese does not cite any authority in support of his argument, he adopts and incorporates by reference the facts and authorities from defendant Martinson's motion to strike.

Plaintiff responds to defendant Wiese's arguments in much the same manner as it did to defendant Martinson's motion, indicating that it has had difficulty in obtaining production of documents from defendant Wiese, has filed a motion to compel and been granted an order compelling production from defendant Wiese, and been required to seek third-party discovery of documents related to the calculation of damages because of its inability to obtain production from defendants. As a result, plaintiff contends, that any delay in the computation of damages is attributable to defendants failure to timely respond to discovery requests.

As noted above, when considering whether Fed. R. Civ. P. 37(c)(1) should operate to exclude the use of information as a result of non-disclosure, the court must first consider whether the party that is the proponent of the information has established substantial justification for the failure to disclose and then consider whether the failure to disclose was harmless.[16] In evaluating the issues of substantial justification and harmlessness, a court should consider the prejudice or surprise to the opposing party; the proponent's ability to cure any such prejudice, the extent to which use of the information would disrupt trial; and the proponent's bad faith or willfulness.[17]

The court has already evaluated the degree of disruption to trial and the issues of potential willfulness and bad faith in the context of the five check transactions, above, and concluded that there will

---

[16] *Nguyen v. I.B.P., Inc.*, 162 F.R.D. 675, 679-80 (D. Kan. 1995).

[17] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002) (citing *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

be no disruptive impact upon trial and that there is no evidence that plaintiff has acted willfully or in bad faith.  The analysis of these factors is identical with regard to the portions of plaintiff's claims for damages at issue in defendant Wiese's motion.  Similarly, the court has already found with regard to the check transactions that plaintiff has made efforts to cure any potential prejudice by continued seasonable supplementation since the drafting of the proposed pretrial order.  The court finds that the plaintiff has made identical efforts with regard to the damage claims at issue.  The court will, therefore, turn to the remaining factor of whether there is prejudice to defendant Wiese from plaintiff's inclusion of the damage claims at issue in the proposed pretrial order.

As was true with the five check transactions above, the court finds that plaintiff's explanation for not providing earlier disclosure appears reasonable in the context of discovery in this case.  Because production of documents was still ongoing at the time the parties' proposed pretrial order was being drafted, the court finds it reasonable to attribute plaintiff's refinement of its damage claims beyond the information provided in its earlier responses to defendant Wiese's damage interrogatory to the development of additional discovery.  As such, the court cannot find that there is any prejudice to defendant Wiese that is not potentially attributable to his own actions, or those of his co-defendant, in delaying production of documents to plaintiff.

Moreover, the court does not find that the claims for damages included in the pretrial order are so different as to be inconsistent with plaintiff's earlier responses to defendant Wiese's interrogatory.  In its supplemental response to Interrogatory No. 14, plaintiff stated that its damages resulted from losses incurred on jobs supervised by defendant Wiese, delays in receipt of payments caused by defendant Wiese, and loss of business with Tyson/I.B.P. as a result of the actions of defendant Wiese, and that these damages

14

amounted to more than $250,000.[18]  While this response certainly does not specify that plaintiff will seek to recover wages paid to defendant Wiese for his work supervising jobs on its behalf, or for the income gained by the work of Wiese Mechanical for Tyson/I.B.P., it certainly is not so narrow as to exclude those possibilities.

Additionally, a review of the complaint (Doc. 1) reveals an allegation that "[d]efendant Wiese, while employed by B&K Mechanical, Inc. failed to devote his time and efforts to the business of B&K Mechanical, Inc. but rather improperly devoted time and effort to personal pursuits, and the business of Contract Welding, to the detriment of B&K Mechanical, Inc."[19]  Given this allegation, it is difficult to see how defendant Wiese could be surprised to learn that plaintiff viewed the wages paid to Wiese potentially to be damages were it able to prove its allegation at trial.  Similarly, plaintiff also alleges in its complaint that "[d]efendant Contract Welding has improperly diverted funds, and property, from B&K Mechanical, inc. and furthermore has, *in conjunction with the [d]efendant Wiese, improperly diverted corporate opportunities from B&K Mechanical, Inc.*"[20]  It is difficult to see how defendant Wiese could be surprised to learn that plaintiff viewed the income earned by Wiese Mechanical to potentially be damages if it was able to prove that such income as derived from corporate opportunities improperly diverted from plaintiff.

---

[18] *See* Defendant Wiese's Memorandum in Support of his Motion to Strike (Doc. 143), at Ex. C.

[19] Complaint (Doc. 1), at ¶ 11.

[20] *Id.* at ¶ 12 (emphasis added).

15

Defendant Wiese states in his memorandum in support of his motion that "[p]laintiff never identified claims of this nature and defendant Wiese has not been given the opportunity to conduct discovery based upon them."[21] However, he does not specify what discovery he has been denied or what additional discovery he would conduct if given the opportunity, and he does not request the opportunity to conduct additional discovery. As plaintiff has alleged in its complaint that defendant Wiese was not performing the tasks for which he was paid and that he was, in concert with defendant Martinson, diverting opportunities away from plaintiff, the court can only assume that defendant Wiese did undertake discovery related to those issues. It is therefore not apparent to the court what additional discovery would be triggered because plaintiff has indicated it will pursue a damage remedy based upon the wages it contends to have been paid for work not properly performed or the business it contends to have been improperly diverted. Certainly, plaintiff's decision to pursue this theory of damages may cause information on the wages paid by plaintiff to defendant Wiese and the income of Wiese Mechanical to take on importance; however, as that information all relates to transactions involving defendant Wiese or his company, he should be able to obtain whatever he might need without the use of formal discovery methods or discovery from other parties.

Because the damage claims made by plaintiff in the proposed pretrial order are not inconsistent with plaintiff's responses to defendant Wiese's damage interrogatory and are consistent with the allegations made by plaintiff in the complaint, the court concludes that their inclusion in the pretrial order does not improperly prejudice defendant Wiese by coming as a surprise. Additionally, because of the delay in defendants' production of documents to plaintiff, the court cannot find that there is any prejudice to

---

[21] Defendant Wiese's Memorandum in Support of his Motion to Strike (Doc. 143), at ¶ 4.b.

16

defendant Wiese that is not potentially attributable to his own actions, or those of his co-defendant, in delaying production of documents to plaintiff. As such, all four factors for assessing substantial justification and harmlessness weigh in favor of permitting plaintiff to include the disputed claims for damages in the pretrial order, and the court concludes that plaintiff had substantial justification for its failure to make earlier disclosure and that any such failure was, in any event, harmless. Defendant Wiese's motion to strike will, therefore, be denied.

**III.    The Parties' Proposed Pretrial Order and Defendant Wiese's Motion to Extend the Dispositive Motion Deadline (Doc. 161)**

As a result of the court's denial of both motions to strike, plaintiff's contentions in the parties' proposed pretrial order will not be altered. The court will therefore proceed with finalizing and entering the pretrial order in this case, as revised during the final pretrial conference and with the objections that gave rise to the instant motions to strike removed.

At the time of the final pretrial conference (Doc. 135), the court, in anticipation of the need to clarify the pretrial order so that it could serve as a basis for the parties' motions for summary judgment, ordered defendant Martinson's motion for summary judgment withdrawn (Doc. 136) and extended the dispositive motion deadline. It was the court's intention that any party wishing to file a dispositive motion would be given an opportunity to do so once the pretrial order had been finalized.

On August 2, 2005, defendant Wiese filed a motion to extend the dispositive motion deadline until two weeks after the entry of the pretrial order in the case (Doc. 161). Plaintiff has filed a response in opposition to defendant Wiese motion (Doc. 162). Having reviewed the parties' filings, the court finds that there is good cause to extend the deadline for the filing of dispositive motions and that doing so furthers

17

the court's intention to establish a deadline for dispositive motions after the entry of the pretrial order. The court will, therefore, grant defendant Wiese's motion and include a new deadline for dispositive motions two weeks after the date the pretrial order is entered when it enters the pretrial order in this case. As the pretrial order replaces the pleadings and controls the subsequent course of the case, any dispositive motions that are filed by plaintiff or defendant Wiese, or re-filed by defendant Martinson, should reference the parties' claims, defenses, and contentions as set forth in the pretrial order.

**IT IS THEREFORE ORDERED**:

1. That defendant Martinson's motion to strike (Doc. 139) is hereby denied.

2. That defendant Wiese's motion to strike (Doc. 142) is hereby denied.

3. That defendant Wiese's motion to extend the dispositive motion deadline (Doc. 161) is hereby granted. The court will establish a new deadline for the filing of dispositive motions when it enters the pretrial order in this case and that deadline will be set two weeks after the date the pretrial order is entered.

**IT IS SO ORDERED.**

Dated this 29th day of December, 2005, at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge